UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE DOUGLAS,

    Plaintiff,

                                      Case No. 10-10372

v.

                                      Hon. John Corbett O'Meara

INTERNATIONAL AUTOMOTIVE
COMPONENTS GROUP NORTH
AMERICA, INC.,

    Defendant
_____/

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      Before the court is Defendant's motion for summary judgment, filed September 30, 2010. Plaintiff filed a response on November 2, 2010; Defendant submitted a reply brief on November 17, 2010. The court heard oral argument on February 10, 2011, and took the matter under advisement. For the reasons explained below, Defendant's motion is granted.

**BACKGROUND FACTS**

      On January 27, 2010, Plaintiff Lawrence Douglas filed this action against his former employer, International Automotive Components Group North America, Inc ("IAC"). IAC is a supplier of automotive parts for General Motors, Ford, Chrysler, and Toyota. Douglas alleges that he was discriminated against on the basis of his age when he was laid off in 2009. At the time, he was 57 years old.

      Douglas began his employment with IAC on March 31, 2007, after IAC purchased certain assets from Lear, where Douglas worked previously. Douglas worked at IAC's Huron, Ohio, plant in various positions, including Quality Engineer/Lab Manager. The products

manufactured at the Huron plant include plastic injection molded products and sound deadening acoustic products, such as door panels, instrument panels, and dash insulators. The Plant Manager for the Huron facility was Charles Raymont.

In the fall of 2007, IAC purchased assets from Collins & Aiken, including its Plymouth, Michigan, facility. Matt Starling was a C & A employee at Plymouth who became an IAC employee after the acquisition. Starling was in the advanced engineering group for flooring and acoustics; the head of the group was Millard King. Starling had worked for C & A since 1997 and had experience with a type of plastic called ethylene vinyl acetate ("EVA"), particularly with respect to its use in carpets and flooring.

EVA is a flexible plastic that is used in various products, such as acoustic products and carpets. At first, the Huron plant used EVA purchased from other companies to make products such as dashboards. Douglas suggested that the Huron plant manufacture its own EVA to save money. This idea was initially rejected because the Huron plant did not use enough EVA for it to make economic sense. However, after the C & A acquisition, the economics of manufacturing EVA at the Huron plant changed. Some of the former C & A facilities used EVA to manufacture carpets, so the volume needed was greater. In addition, one of the C & A plants acquired by IAC had a piece of equipment known as an extruder, which is used to manufacture EVA. Therefore, at the end of 2007, IAC decided to manufacture EVA at the Huron plant.

IAC decided to manufacture two types of EVA: one for dashboards, called "dash" or "NVH" formula, and another type to coat the back of carpets. Douglas was part of a group that was charged with developing a NVH formula for use at the Huron plant. Because of his carpet experience, Matt Starling was brought in to the Huron plant to help develop the EVA carpet

formula. Starling remained in the advanced engineering flooring and acoustic group, but spent most of his time at the Huron plant as a "corporate resource."

The Huron plant began production of the NVH EVA in 2008. The carpet formula EVA was in trials in the first quarter of 2009 and did not begin production until the late first quarter or early second quarter.

In the fall of 2008, the auto industry entered into a severe downturn; General Motors and Chrysler obtained government loans to stay afloat and eventually filed for bankruptcy. IAC saw vehicle volumes and demand for its parts go into a "tailspin." As a result, IAC decided to impose cost-cutting measures, including salary cuts and temporary layoffs in early 2009. The goal for the layoffs was to cut ten percent of base wages.

On January 13, 2009, Huron Plant Manager Raymont met with his direct reports to discuss the layoffs and the ten percent target. They discussed positions to be included in the temporary layoff, including the position held by Douglas, although no decision was made at that time.

The next day, Starling's manager at the Plymouth plant (King) asked whether there was a place for Starling at the Huron plant, because King anticipated putting Starling on the Plymouth plant's layoff list. After receiving the inquiry, Raymont stated that he "absolutely" needed Starling because he was "critical" to the carpet EVA project. Raymont felt that Starling was needed more than Douglas, in part, because the NVH project was already in production, while they were still trying to "bring home" the carpet project, which was Starling's focus. Consequently, Raymont elected to retain Starling (age 36) and place Douglas (age 57) on the temporary layoff list.

Douglas was laid off on January 30, 2009. Starling was (formally) transferred from the

Plymouth plant to the Huron plant, where he continued his involvement in the carpet EVA project and also assumed some, but not all, of the duties previously performed by Douglas.

Although IAC anticipated that the layoffs would be temporary, the economic outlook did not improve. Therefore, IAC converted the temporary layoffs to permanent layoffs effective March 31, 2009. At that time, Douglas's employment with IAC was terminated.

Ten employees, including Douglas, were laid off from the Huron facility. Eight of those ten were over 40 years old. Overall, 55 of the 80 Huron employees (69%) were over 40. Defendant points out that the average age of Huron employees before the layoff was 45.04; after the layoff, it was 44.49.

Douglas alleges that, after his layoff, he applied for positions at IAC for which he was not hired. Douglas claims that he was not hired for these positions because of his age.

## LAW AND ANALYSIS

### I.  Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### II. Termination Claim

Douglas's claim arises under the Age Discrimination in Employment Act. To establish a prima facie case of age discrimination, a plaintiff must demonstrate that he was (1) a member of a protected class; (2) discharged; (3) qualified for the position; and (4) replaced by someone outside the protected class. See Geiger v. Tower Automotive, 579 F.3d 614, 622-23 (6th Cir. 2009). "If the termination arises as part of a work force reduction, this court has modified the fourth to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" Id. (citation omitted).

A person is not considered to be discharged as part of a reduction in force if he is replaced after his discharge. Id. at 623. A discharged employee is considered to be replaced "only when another employee is hired or reassigned to perform the plaintiff's duties." Id. (citation omitted). "A person is not considered replaced when his duties are absorbed by another person 'or when the work is redistributed among other existing employees already performing related work.'" Id. (citation omitted).

There is no dispute that Douglas meets the first three elements of a prima facie case of age discrimination: he is a member of a protected class, he was discharged, and he was qualified for the position. The parties disagree as to whether the fourth element is met; that is, whether Douglas was replaced by someone outside the protected class. Douglas contends that he was replaced by a younger employee, Matt Starling. IAC points out that Starling did not replace Douglas, but only absorbed some of his duties. See also Pl.'s Br. at 12 (noting that Starling "still does not perform all of the duties done by Larry Douglas"). Under such circumstances, Starling did not "replace" Douglas as a matter of law. See Geiger, at 623. Accordingly, Douglas was

terminated as part of a reduction in force and he must provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" Id.

Douglas has not presented such evidence here. There is no evidence that the decision-maker, Raymont, harbored age-based animus. Raymont is about the same age as Douglas and never made any derogatory comments regarding Douglas's age. At the time of the temporary layoff, an older Senior Quality Engineer, Daniel Schee (age 60) was retained. The first person hired at the Huron plant after the temporary layoff, on March 9, 2009, was Gerald Asher, who was born in 1950 and is one year older than Douglas.

When asked why he thought he was discharged because of his age, he stated: "I'm 50-some years old. They replaced me with a 30-some." Douglas Dep. at 143. Douglas also noted that his job performance had been satisfactory. However, in a reduction in force case, "the fact that a competent older employee was terminated and a younger employee was retained is not dispositive. . . . Indeed, standing alone, such a showing fails to establish a prima facie case of age discrimination. . . . [T]he decision to discharge a qualified, older employee is not inherently suspicious. . . . In a RIF, qualified employees are going to be discharged." Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 896 (6th Cir. 1997) (citing Barnes v. GenCorp, Inc., 896 F.2d 1457, 1466 (6th Cir. 1990)).

Douglas also suggests that the statistical evidence shows he was singled out for discharge because of his age. Ten employees were terminated in the reduction in force; this statistical sample is likely too small to have probative value. See Simpson v. Midland-Ross Corp., 823 F.2d 937, 943-44 & n.7 (6th Cir. 1987) (reliance on small sample of seventeen people "suspect").

Further, the statistics do not create an inference that IAC targeted employees for layoff because of their age. Eight of the ten employees terminated in the March 2009 reduction in force were over 40. According to Defendant, 69% of the Huron plant employees were over 40. Therefore, for the ages of the terminated group to correlate with the plant as a whole, IAC would have had to terminate 7 employees over 40 (70% of the group of 10) rather than 8 (80% of the group of ten). Plaintiff points out that 17.4% (4 out of 23) of employees over 50 were terminated, 12.5% (4 out of 32) of employees over 40 were terminated, and only 8% (2 out of 25) of employees under 40 were terminated. Again, the samples are too small to create an inference of discrimination; the addition or subtraction of only one employee in each group changes the percentages significantly. For example, if IAC had laid off one less person over 50, and one more person under 40, the percentages would virtually even out at around 12-13% for each category.

In order for statistical data to create an inference of age discrimination, "the statistics must show a *significant disparity* and eliminate the most common nondiscriminatory reasons for the disparity." Bender v. Hecht's Dept. Stores, 455 F.3d 612, 622 (6th Cir. 2006) (emphasis in original). The statistics do not reveal a significant disparity here between the ages of the laid off employees and the ages of those who remained.

Douglas also contends that he establishes a prima facie case because he was better qualified than Starling. See Barnes v. GenCorp, 896 F.2d 1457, 1466 (6th Cir. 1990) (in a reduction in force case, "a plaintiff could establish a prima facie case by showing that he or she possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff"). "Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination." Bender,

-7-

455 F.3d at 626. The Sixth Circuit has provided the following guidance for evaluating qualifications evidence:

> In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment . . . . On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be *so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former.* . . . [W]hen qualifications evidence is all (or nearly all) that a plaintiff proffers to show pretext, *the evidence must be of sufficient significance itself to call into question the honesty of the employer's explanation.* A laxer standard would move this court from its proper role of preventing unlawful employment practices to the illegitimate role of acting as a "super personnel department," overseeing and second guessing employers' business decisions.

Bender, 455 F.3d at 626-27 (citations omitted) (emphasis added).

Raymont chose to retain Starling over Douglas because he felt that Starling was "critical" to the carpet EVA project, which had not yet launched at the time of the temporary layoffs in January 2009. In 2008, Starling spent "90 to 95 percent" of his time on the carpet project. Raymont valued Starling's experience at other IAC plants that manufactured carpet as well as his "extensive carpet experience."

Douglas contends that he was better qualified and more experienced than Starling. Douglas points out that he also worked on the carpet project and had a range of other experience that made him more valuable overall than Starling. There is no dispute, however, that Starling was able to perform his job satisfactorily. Raymont perceived Starling to be more critical to the carpet project than Douglas; Douglas's qualifications are not "so significantly better" as to call

into question the honesty of Raymont's explanation for retaining Starling, particularly in light of the fact that there is no evidence that Raymont harbored age-based animus. Although Douglas disagrees with Raymont's assessment and the criteria he valued, such disagreement does not cast doubt on whether Raymont honestly believed Starling to be more critical to the carpet project. See Browning v. Department of the Army, 436 F.3d 692, 698 (6th Cir. 2006) (what matters is the decisionmaker's perception of the candidate's qualifications, not the candidate's perception); Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996) ("The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons.").

In sum, Douglas has not presented direct, circumstantial, or statistical evidence tending to indicate that IAC singled him out for layoff because of his age. Therefore, the court will grant Defendant's motion for summary judgment on this claim.

### III.   Discrimination in Hiring Claim

Douglas challenges IAC's decision not to hire him for two positions. Douglas applied for an Engineering Manager position in February 2009. Human Resources Manager Kathy Kozich told him that there was a Plant Technical Manager position open at the Fremont, Ohio, plant and that she would consider him. The position became open because IAC transferred the carpet and flooring work for the Chrysler minivan from Sydney, Ohio, and Sheboygan, Wisconsin, to Fremont. Both the Sydney and Sheboygan plants had existing Plant Technical Managers, Richard McCarty and Matt Dietz. McCarty was not interested in the Fremont position; Dietz (age 30) was interested and was a good performer, so IAC decided to transfer him to Fremont to fill the open position.

Douglas also applied for the position of Senior Program Engineering Manager. He applied through Adecco, a recruiting company who screened applicants for IAC. Adecco apparently did not forward Douglas's information to IAC. On March 12, 2010, IAC hired Wayne Hertlein (age 52) for the slightly changed position of Senior Plant Engineering Supervisor. Those who hired Hertlein were not aware that Douglas had applied for the position.

To establish a prima facie case of age discrimination in a failure to hire case, a plaintiff must show (1) that he is a member of a protected class; (2) that he applied for and did not receive a job; (3) that he was qualified; and (4) that a similarly situated younger employee received the job. Seay v. Tennessee Valley Authority, 339 F.3d 454, 463 (6th Cir. 2003). Douglas cannot establish a prima facie case with respect to either position. Other than to allege, in a conclusory manner, that he is more qualified than Dietz or Hertlein, Douglas has not shown that he is similarly situated to either candidate. Dietz had already worked in the position of Plant Technical Manager, whereas Douglas had not. As for Hertlein's position, Douglas has not provided evidence that IAC knew that he applied through Adecco. There is no evidence in the record that the decision-makers for either position made their choices based on a discriminatory reason. Therefore, the court will grant summary judgment in favor of IAC.

## **ORDER**

IT IS HEREBY ORDERED that Defendant's September 30, 2010 motion for summary judgment is GRANTED.

                                        s/John Corbett O'Meara
                                        United States District Judge

Date: February 28, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, February 28, 2011, using the ECF system.

                                        s/William Barkholz
                                        Case Manager